**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMIEE TRACY**, on behalf of herself and others similarly situated, | ) ) ) | **Case No. 2:22-cv-00294** |
| Plaintiff, | ) ) | **JUDGE JAMES L. GRAHAM** |
| v. | ) ) ) | **MAGISTRATE JUDGE KIMBERLY A. JOLSON** |
| **QUANTUM HEALTH, INC.,** | ) ) | <u>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**</u> |
| Defendant. | ) | <u>**SETTLEMENT**</u> |

## I.  <u>INTRODUCTION</u>

Plaintiff Amiee Tracy ("Representative Plaintiff"), on behalf of herself and the members of proposed settlement class, and Quantum Health, Inc. ("Defendant") respectfully move this Court to preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement") between Representative Plaintiff and Defendant pursuant to Federal Rule of Civil Procedure 23(e).

In support of this Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit 1:**  Class Action Settlement Agreement and Release

**Exhibit 2:**  Declaration of Matthew J.P. Coffman

**Exhibit 3:**  Notice of Class Action Settlement

**Exhibit 4**:  Proposed Preliminary Order Approving Class Action Settlement Agreement

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 4** and:

- Certify the following class under Rule 23 for purposes of settlement only: "All current and former hourly, non-exempt customer service employees of Defendant who were paid for at least forty (40) or more hours in any workweek from January 25, 2020 to September 6, 2023 (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Rule 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payment to Representative Plaintiff;

- Designate Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

For the reasons explained below, the Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. Therefore, the Parties respectfully request the Court to preliminarily approve the Settlement.

## II.   FACTS

### A.   Background

On January 25, 2022, Representative Plaintiff filed this case (the "Action"). In the Action, Representative Plaintiff brings claims against Defendant on behalf of herself and others similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03, and 4111.10; and the Ohio Prompt Payment Act ("OPPA"), O.R.C. § 4113.15. Coffman Decl., attached as **Exhibit 2**, ¶ 13.

In particular, Representative Plaintiff alleges that she and other similarly situated hourly, non-exempt employees who have worked for Defendant were not properly paid overtime for all hours worked over forty (40) in a workweek as a result of not being paid for time spent "booting

2

up" their computers and logging in to and out of Defendant's computer systems, time tracking system, and numerous software applications/programs. For background, Representative Plaintiff alleged that Defendant employs customer service employees[1] to provide customer service through inbound and outbound calls. Representative Plaintiff alleges that Defendant required her and other hourly customer service employees to start, boot up, and log in to its computer systems prior to clocking in to the timekeeping system. Likewise, Representative Plaintiff alleges that Defendant required her and other customer service employees to clock out of work prior to logging out of, and shutting down these computer systems. Representative Plaintiff also alleges that Defendant required her and other customer service employees to clock out of work during lunch breaks (and, Plaintiff alleges that, while clocked out of work, their systems and software programs would "time out" or otherwise shut down) and to log in and boot up computer systems before clocking back in after lunch breaks. Representative Plaintiff alleges that this time spent on the computers prior to and after being counted as "clocked in" was compensable. During workweeks when she and other similarly situated customer service employees worked forty (40) or more hours, Representative Plaintiff alleges that they are owed unpaid overtime compensation as a result of the "boot up" time, the "boot down" time, and other time it took to prepare for work in relation to their job activities including performance of preliminary and postliminary activities that are an integral and indispensable part of their principal activities. Coffman Decl., **Ex. 2**, ¶ 14.

Defendant denied and continues to deny the claims asserted in the Action. Defendant denies any wrongdoing or liability to class members. Coffman Decl., **Ex. 2**, ¶ 15.

The Parties stipulated to, and the Court granted, conditional certification of an FLSA

---

[1] "Customer service employees" is defined as employees with a title and/or position of Patient Services Representative ("PSR"), PSR Bilingual, Electronic PSR, Transplant Care Coordinator, Disability Care Coordinator, PPOM Care Coordinator, Care Partner Care Coordinator, and/or Claims Specialist.

collective action for the following individuals: "All current and former hourly, non-exempt customer service employees of Defendant who were paid for at least forty (40) or more hours in any workweek from January 25, 2019 to [May 3, 2022]." A total of approximately 234 individuals ("Current Opt-In Plaintiffs") opted in to this lawsuit by returning a signed Consent to Join form. Coffman Decl., **Ex. 2**, ¶¶ 16-17.

Thereafter, Defendant produced the payroll and time records for Representative Plaintiff and the Current Opt-In Plaintiffs. To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in settlement discussions. Class Counsel engaged the services of an MA-level analyst to construct a damages model using relevant pay and time records produced by Defendant. Coffman Decl., **Ex. 2**, ¶ 20.

The Parties scheduled a mediation on August 11, 2023 before mediator Frank A. Ray. The Parties were unable to reach an agreement at mediation; however, the Parties continued settlement discussions over the course of the next couple of weeks with the continued assistance of Mr. Ray. On August 31, 2023, Mr. Ray issued a Mediator's Proposal and Recommendation ("Mediator's Proposal"), and on September 5, 2023, the Parties were notified that each Party accepted and approved the Mediator's Proposal and thus, a resolution was reached. The terms of that agreement were thereafter incorporated in the Class Action Settlement Agreement and Release ("Settlement Agreement") that is currently presented to this Court for preliminary approval in the attached **Exhibit 1**. The total class size (regardless of whether the individual has already opted in or not) includes 2,545 customer service employees. Settlement Agreement, **Ex. 1**, ¶¶ 4-9; Coffman Decl., **Ex. 2**, ¶¶ 21-23.

### B. Summary of the Key Settlement Terms

The total settlement amount is $900,000.00, which shall be used to provide for: (a) all

individual payments to the Class Members who do not opt out of the Settlement; (b) a service award to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration. Settlement Agreement, **Ex. 1**, ¶ 25; Coffman Decl., **Ex. 2**, ¶ 24.

Upon preliminary approval, the Notice of Settlement and Consent and Release Form, attached as **Exhibit 3**, will be distributed to the Class Members providing them with an opportunity to opt in to the FLSA Settlement or opt out of or object to the Rule 23 Settlement. Class Members will have sixty (60) days to opt in to the FLSA Settlement or opt out of or object to the Rule 23 Settlement. Settlement Agreement, **Ex. 1**, ¶ 50; Coffman Decl., **Ex. 2**, ¶ 27.

Class Members who do not exclude themselves by opting out of the Rule 23 Settlement will receive individual settlement payments on a pro rata basis depending on the number of workweeks that they worked forty (40) or more hours during the applicable lookback period in comparison to the total number of workweeks in which all Class Members worked forty (40) or more hours during the applicable lookback periods.[2] According to proposed Class Counsel's analysis, the total settlement reflects the value of approximately 8.5 minutes of additional work performed each day during the applicable lookback period. According to proposed Class Counsel's analysis, the individual settlement payments, after all deductions, reflect the value of approximately 5 minutes of additional work performed each day during the applicable lookback period. For the Class Members who do not opt out of the Rule 23 Settlement and whose calculated damages do not exceed minimum thresholds, they will receive a minimum payment of $10.00.

---

[2] Opt-In Plaintiffs have a three-year lookback starting from the date that their consent form was filed and ending on September 6, 2023 while Class Members who do not opt out of the Rule 23 Settlement have a two-year lookback period from the date the Complaint was filed and ending on September 6, 2023. The reason for two different lookback periods is because the OMFWSA lookback period, which applies to Class Members who are not Opt-In Plaintiffs, is two (2) years. For the purposes of settlement only, the Parties agreed to apply the FLSA three-year lookback period to Opt-In Plaintiffs.

Settlement Agreement, **Ex. 1**, ¶ 49. Coffman Decl., **Ex. 2**, ¶¶ 28-30.

Class Members who opt in to the FLSA Settlement by returning a Consent and Release Form will receive one hundred percent (100%) of their Settlement Award. Class Members who do not opt in to the FLSA Settlement and do not opt out of the Rule 23 Settlement will receive fifty percent (50%) of their Settlement Award. The remaining fifty percent (50%) of the Settlement Awards not claimed by the Class Members who did not opt in to the FLSA Settlement shall revert back to Defendant. The Settlement Awards for Class Members who opt out of the Rule 23 Settlement shall revert back to Defendant. Class Counsel will provide a list of all payments for review and approval to Defendant's counsel. The Notice of Settlement will include the Settlement Award amount that the respective Class Member is expected to receive. Settlement Agreement, **Ex. 1**, ¶ 49. Coffman Decl., **Ex. 2**, ¶¶ 31-32.

Representative Plaintiff will be paid a service award in the amount of $10,000.00. Under the terms of the Settlement, Class Counsel will be paid one-third (1/3) of the total settlement fund for attorneys' fees and will be reimbursed for litigation expenses of $14,328.89. Lastly, the cost of settlement administration, which is estimated to be $24,998.00, will be paid out of the total settlement amount. Given the substantial monetary relief recovered on behalf of the Class Members, the requests to pay the Service Award, Class Counsel's fees and litigation expenses, and cost of settlement administration are all reasonable as more fully explained below. Settlement Agreement, **Ex. 1**, ¶¶ 64, 65; Coffman Decl., **Ex. 2**, ¶¶ 34–36.

## III.  PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE.

The Settlement is subject to approval by the Court pursuant to Rule 23. Courts in the Sixth Circuit use a three-step process for approving class action settlements. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio Feb. 22, 2021) (Newman, J.). The first step requires the court to

preliminarily approve the class action settlement. *Id.* The second step requires that notice of the class action settlement be issued to the proposed settlement class members. *Id.* The third step requires the court to hold a fairness hearing and decide whether to grant final approval of the class action settlement. *Id.* Currently, the Parties request that the Court preliminarily approve the Settlement under step one.

At step one, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[3] Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable and adequate. As discussed below, these requirements are met here.

### A. The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).

In the Settlement, the Parties have agreed to the certification of the proposed Rule 23 settlement class[4]:

> All current and former hourly, non-exempt customer service employees of Defendant who were paid for at least forty (40) or more hours in any workweek from January 25, 2020 to September 6, 2023.

In total, the proposed settlement class (including Representative Plaintiff and all Current Opt-In Plaintiffs) includes 2,545 individuals. Settlement Agreement, **Ex. 1**, ¶ 5; Coffman Decl., **Ex. 2**, ¶ 23.

Under Rule 23, a class action may be maintained if the following requirements of Rule

---

[3] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three (3) conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

[4] In the event that the Settlement Agreement does not become effective for any reason, Defendant reserves the right to challenge certification of the class and Plaintiff agrees with this reservation of rights. Defendant agrees and consents to Rule 23 class certification for settlement purposes only.

23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). All four (4) elements are satisfied here.

1. *The numerosity requirement of Rule 23(a)(1) is met.*

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.) (internal quotation marks omitted). This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.* Numerosity is easily satisfied here because the proposed settlement class includes 2,545 individuals. *See, e.g.*, *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (noting that it is generally accepted that a class of 40 or more is sufficient to meet the numerosity requirement).

2. *The commonality requirement of Rule 23(a)(2) is met.*

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotation marks and citation omitted).

In this case, the legal issue that links the Class Members—whether they were unlawfully denied overtime compensation as a result of Defendant's alleged policy or practice of requiring them to boot up and boot down their computer systems off the clock—is undoubtedly "substantially related to the resolution of the litigation." Accordingly, the commonality requirement is met.

3. *The typicality requirement of Rule 23(a)(3) is met.*

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal quotation marks omitted). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same alleged course of conduct: its failure to pay Representative Plaintiff and the Class Members overtime compensation based on its alleged policy or practice of requiring them to boot up and boot down their computer systems as well as perform other preliminary and postliminary activities that are an integral and indispensable part of their principal activities off the clock.

4.     *The adequacy of representation requirement of Rule 23(a)(4) is met.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525

9

(6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policies and practices that affected the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members: unpaid overtime compensation. Thus, Representative Plaintiff's interests are aligned with those of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill her duties as the class representative. She has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the Settlement by both attending the mediation and continuing to engage with Class Counsel in the weeks that followed. Coffman Decl., **Ex. 2**, ¶ 43.

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. Collectively, Class Counsel has litigated over 200 wage and hour cases in federal courts around the country. *Id.*, ¶ 8. Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

### B. <u>The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).</u>

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

1.    *The predominance requirement of 23(b)(3) is met.*

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirement is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including (a) whether Defendant required the Class Members to boot up and boot down their computer systems as well as perform other preliminary and postliminary activities that are an integral and indispensable part of their principal activities off the clock without compensation; (b) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; (c) whether Defendant was aware that the Class Members worked overtime; and (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as alleged in the Action.

2.    *The superiority requirement of Rule 23(b)(3) is met.*

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four (4) factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation regarding alleged unpaid wages against Defendant involving the proposed settlement class members. Third, the benefits of concentrating the claims in this Court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many, if not all, of Defendant's witnesses are located in this district. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods*., 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court. A final resolution of Defendant's liability is also fair because the case deals with alleged policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant "the benefit of finality and repose." *Id*. (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

C.      **The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005) (citing *Mullane*, 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974))). To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel*, 534 F.3d at 514 (6th Cir. 2008) (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id*. (emphasis in original) (citing *DeJulius*, 429 F.3d at 944). The issue is not whether all class members received notice "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Id.* at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172–77).

In this case, the Notice of Class Action Settlement will be sent to the Class Members by first-class mail using the mailing addresses shown in company records unless another mailing address was provided by a Class Member or is otherwise discovered during the National Change of Address search. The notice also gives Class Members detailed information regarding how to object to the settlement. Accordingly, the notice satisfies Rule 23 and due process requirements.

### D.    The Settlement is Fair, Reasonable, and Adequate under Rule 23(e).

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the 7-

factor standard discussed below. *UAW*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation and lend themselves readily to compromise. 4 Newberg on Class Actions § 11.41 (4th ed. 2007) (collecting cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145–46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *accord Sweet v. Gen. Tire & Rubber Co.*, 1982 WL 278, at *5 (N.D. Ohio Mar. 17, 1982).

The seven (7) factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626 (6th Cir. 2007) (citing *Granada Invs., Inc.*, 962 F.2d at 1205; *Williams*, 720 F.2d at 922–23 (6th Cir.1983)). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. As discussed below, each of these factors supports preliminary approval here.

### 1.    *No indicia of fraud or collusion exists.*

There was no fraud or collusion in reaching the Settlement. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling,*

14

*Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *2 (N.D. Ohio Oct. 10, 2018) (citation omitted). All settlement negotiations were extensive, conducted fairly with a neutral third-party mediator, and at arm's-length and only occurred after the exchange and rigorous analysis of the relevant case law and pay and time data; exchange and testing of the Parties' legal and factual positions; and after a mediator's proposal. Coffman Decl., **Ex. 2**, ¶¶ 19–22; *see Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (stating that arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements). Both Parties' counsel, who are experienced in wage and hour class and collective actions, support the settlement as fair and reasonable, and all certify that it was reached at arm's-length. Coffman Decl., **Ex. 2**, ¶ 48.

2. *The complexity, expense, and likely duration of continued litigation favor approval.*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Wage and hour class and collective actions are inherently complex, expensive, and time-consuming. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020) (Rice, J.) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (further citation omitted) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.").

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. The Settlement, on the other hand, provides substantial relief to

Representative Plaintiff and the Class Members promptly and efficiently and amplifies the benefits of that relief through the economies of class resolution. Coffman Decl., **Ex. 2**, ¶¶ 37–41.

3.     *Investigation was sufficient to allow the Parties to act intelligently.*

To confirm that Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.); *Satterly*, 2020 WL 6536342, at *5–6. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly,* 2020 WL 6536342, at *5 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted); *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (Black, J.) (stating that while the parties had not reached conducting depositions, "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Defendant obtained and produced the payroll and other wage data required for Representative Plaintiff and the Current Opt-In Plaintiffs to construct a damages model, retain an

analyst to provide a damages calculation for Representative Plaintiff and Opt-In Plaintiffs, and engage in extensive back and forth calculations between counsel for the Parties. In addition, the legal issues in this case were thoroughly researched and debated by the Parties. Coffman Decl., **Ex. 2**, ¶ 21.

###### 4. *The risks of litigation and uncertainty of recovery favor approval.*

Counsel for both sides believe in the merits of their clients' positions but nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims and maintains that the Class Members are not entitled to any overtime compensation; the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Coffman Decl., **Ex. 2**, ¶¶ 49–50.

###### 5. *Experienced counsel's views favor approval.*

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 WL 6536342, at *7; *see also Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good

faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable and in the best interest of the Class as a whole. Coffman Decl., **Ex. 2**, ¶ 38.

> 6. *The reaction of absent class members cannot be assessed until after notice issues.*

There has not yet been an opportunity to gauge the reaction of absent Class Members as class notice has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their Counsel, or any person on their behalf shall seek to solicit or otherwise encourage anyone to object to the settlement; appeal from any order of the Court that is consistent with the terms of this settlement; or discourage participation in the settlement claims process. Class Counsel, however, may advise Class Members how to assert their right to object. However, this issue can be reexamined in the motion for final approval and certification.

> 7. *The public interest favors settlement.*

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 WL 6536342, at *7; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Indeed, the "[t]ouchstone for final approval is the effect on the class <u>as a whole</u> in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (emphasis in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial

resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

      **E.**      <u>**The Settlement Distributions Are Fair, Reasonable, and Adequate**</u>.

As a part of the scrutiny that they apply to wage and hour settlements, courts must ensure "that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07-CV-3127, 2009 WL 10715595, at *9 (N.D. Ohio Aug. 10, 2009). In the present case, the Settlement provides that the total settlement amount will be distributed as follows: (a) individual payments to the Class Members who do not opt out of the Settlement; (b) individual payments to the Class Members who opt in to the FLSA Settlement; (c) a service award to Representative Plaintiff; (d) Class Counsel's attorneys' fees and litigation expenses; and (e) the cost of settlement administration.

As discussed below, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Class Members.

      1.      *<u>The individual payments are reasonable and adequate.</u>*

The amounts remaining in the Global Settlement Fund—after the Service Award, the attorneys' fees and litigation costs, and the Settlement Administrator's fee have been deducted— will be distributed to Class Members who do not opt out of the settlement, including Representative Plaintiff and Opt-In Plaintiffs, on a pro rata basis depending on the number of workweeks that they worked forty (40) or more hours during the Covered Period or the Opt-In Plaintiff Covered Period, as applicable, in comparison to the total number of workweeks and hours worked by all Class Members. The Gross Settlement Fund reflects the value of approximately 8.5 minutes of additional work performed each day during the Covered Period. The potential

Settlement Awards, after all deductions, reflect the value of approximately 5 minutes of additional work performed each day during the Covered Period. Class Members who do not opt out of the settlement will receive a minimum payment of $10.00 if their settlement payment does not otherwise exceed this amount. Class Members who opt in to the FLSA Settlement by returning a Consent and Release Form will receive one hundred percent (100%) of their settlement payment. Class Members who do not opt in to the FLSA Settlement and do not opt out of the Rule 23 Settlement will receive fifty percent (50%) of their settlement payments. The remaining fifty percent (50%) of the settlement payments not claimed by the Class Members who do not opt in to the FLSA Settlement shall revert back to Defendant. The Settlement Awards for Class Members who opt out of the Rule 23 Settlement shall revert back to Defendant. Coffman Decl., **Ex. 2**, ¶¶ 27–33.

In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members who do not opt out of the settlement for unpaid overtime compensation. As explained above and in the Declaration of Class Counsel, the Settlement provides such individual settlement payments even though Defendant contends that the Class Members were not entitled to *any* compensation because Class Members were not required to boot up and/or boot down their computer systems off the clock, and, if they did, Defendant disputes the amount of time to complete the tasks and contends that the amount of time was *de minimis*. These factors confirm Class Counsel's opinion that the settlement is fair and reasonable and the payments to Representative Plaintiff and the Class Members are not only adequate but exceptional.

        2.    *The service award is proper and reasonable.*

The Settlement provides for a service award of $10,000 to Representative Plaintiff. Courts

routinely approve service awards in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (Weber, J.); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed service award set forth in the Agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly*, 2020 WL 6536342, at *8–9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019

WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (approving a $10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376, at *7–8 (same); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (same); *Swigart*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (Black, J.) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 25, 2013) (Marbley, J.) (awarding $12,500 service award).

Representative Plaintiff spent significant time assisting Class Counsel in their investigation and prosecution of this case. Furthermore, Representative Plaintiff completed written discovery, sat for a deposition, attended mediation, and continued to work closely with Class Counsel even after the mediation was unsuccessful to bring this dispute to a resolution. In addition, Representative Plaintiff attached her name to a publicly filed lawsuit against her former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018)). As such, the time and efforts that Representative Plaintiff provided supports the requested service award. Coffman Decl., **Ex. 2**, ¶ 43.

3.     *The attorneys' fees and expenses to Class Counsel are proper and reasonable.*

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's

mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)), *cert. denied*, 513 U.S. 875 (1994).

In this case, the Settlement provides that Class Counsel receive one-third (1/3) of the total settlement amount as payment for its attorneys' fees. A one-third (1/3) fee is "typical for attorney's fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4–8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.). In fact, in common fund cases, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at *4 (quoting *Swigart*, 2014 WL 3447947, at *5). This "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, at *5 (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950, at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *5–7 (S.D. Ohio May 17, 2021) (Rice, J.).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour common fund cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021) (Marbley, C.J.). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (Marbley, J.). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage

approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted); *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (Marbley, J.); *Dillow*, 2018 WL 4776977, at *4; *Carr v. Bob Evans Farms*, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *see also Osman*, 2018 WL 2095172, at *3 (citation omitted) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'").

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses. Coffman Decl., **Ex. 2**, ¶ 42. "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk.").

Finally, courts acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third (1/3) of the total settlement amount appropriately compensates Class Counsel for its prosecution of this case and advances the public's

interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

The Agreement also provides that Class Counsel will be reimbursed its out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $14,328.89. Coffman Decl., **Ex. 2**, ¶ 24. Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should preliminarily approve payment from the fund to Analytics Consulting, LLC in the amount of $24,998.00 for settlement administration costs.[5] *Id.*, ¶ 24.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate and grant preliminary approval under Rule 23(e).

---

[5] Analytics Consulting specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics Consulting on class and collective action notice and settlement administration, and Analytics Consulting has been approved as settlement administrator in cases across the country. *See, e.g.*, Karpik v. Huntington Bancshares Inc., No. 2:17-cv-1153, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021) (Watson, J.) ("[T]he Court appointed Analytics Consulting, LLC ('Analytics') to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement."); Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020 WL 1325014, at *8 (E.D. Cal. Mar. 20, 2020) ("Analytics Consulting, LLC, is appointed as the settlement administrator"); Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator.").

IV.    <u>**CONCLUSION**</u>

Representative Plaintiff and Defendant respectfully request that the Court enter the

Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit**

**4** and:

- Certify the following class under Rule 23 for settlement purposes only: "All current and former hourly, non-exempt customer service employees of Defendant who were paid for at least forty (40) or more hours in any workweek from January 25, 2020 to September 6, 2023";

- Preliminarily approve the Settlement pursuant to Rule 23;

- Approve the Parties' plan for distribution of the Notice of Settlement and Consent and Release Form;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the Service Award to Representative Plaintiff;

- Designate Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

**COFFMAN LEGAL, LLC**                    **TAFT STETTINIUS & HOLLISTER LLP**

*/s/ Adam C. Gedling*_____         */s/ David J. Butler*_____
Matthew J.P. Coffman (0085586)            David J. Butler (0068455)
Adam C. Gedling (0085256)                 Pamela S. Krivda (0041133)
Kelsie N. Hendren (0100041)               Janica Pierce Tucker (0075074)
Tristan T. Akers (0102298)                Rachel A. Smoot (0092296)
1550 Old Henderson Rd.                    Abigail M. Thederahn (0100242)
Suite 126                                 65 East State Street, Suite 1000
Columbus, OH 43220                        Columbus, OH 43215-4213
614.949.1181                              Telephone: 614-221-2838
614.386.9964 (Fax)                        Facsimile: 614-221-2007
Email: mcoffman@mcoffmanlegal.com         Email: dbutler@taftlaw.com

agedling@mcoffmanlegal.com    pkrivda@taftlaw.com
khendren@mcoffmanlegal.com   jpierce@taftlaw.com
takers@mcoffmanlegal.com    rsmoot@taftlaw.com
              athederahn@taftlaw.com

*Attorneys for Named Plaintiff and those*
*similarly situated*       *Attorneys for Defendant Quantum Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 4th day of June, 2024, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Adam C. Gedling*
Adam C. Gedling