**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMIEE TRACY**, on behalf of herself and others similarly situated, | ) ) ) | **Case No. 2:22-cv-00294** |
| Plaintiff, | ) ) | **JUDGE JAMES L. GRAHAM** |
| v. | ) ) ) | **MAGISTRATE JUDGE KIMBERLY A. JOLSON** |
| **QUANTUM HEALTH, INC.**, | ) ) ) | **JOINT MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND** |
| Defendant. | ) ) | **FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## I.     INTRODUCTION

Plaintiff Amiee Tracy ("Representative Plaintiff"), on behalf of herself and the members of the proposed settlement class ("Class Members"), and Quantum Health, Inc. ("Defendant") (collectively, the "Parties") respectfully request that this Court enter an order certifying the settlement class and approving the settlement of this class action pursuant to Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate.

In support of this Motion, Representative Plaintiff and Defendant submit the following exhibits:

> **Exhibit 1**:     Proposed Order Certifying the Settlement Class and Granting Final Approval of the Class Action Settlement
>
> **Exhibit 2:**     Declaration of Jeffrey J. Mitchell

This settlement is ripe for final approval. Accordingly, Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Order that:

- Certifies the Rule 23 settlement class as defined in the Parties' Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement");

1

- Approves, pursuant to Rule 23(e)(2), the settlement of this action as "fair, reasonable, and adequate";

- Approves the Class Members' waiver of their wage and hour claims as provided in the Settlement Agreement;

- Approves the distributions to the 2,530 Class Members who have not requested exclusion from the settlement in accordance with the Settlement Agreement;

- Designates Representative Plaintiff as the Class Representative;

- Approves the service payment of $10,000.00 to Representative Plaintiff;

- Designates Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC as Class Counsel; and

- Approves Class Counsel's request for attorneys' fees and litigation expenses.

## II.  FACTS

The Parties' discussion of the claims, defenses, procedural, history, negotiations of the settlement, and settlement terms is omitted from this Motion but was more fully set forth in their Motion for Preliminary Approval. ECF No. 69, at PAGEID# 463-67.

### A.  The Court's Preliminary Approval of the Settlement and the Notice Process

On June 27, 2024, the Court granted preliminary approval of the settlement, preliminarily certified the Class, approved Representative Plaintiff Amiee Tracy as the class representative, appointed Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC as Class Counsel, directed that the Notice of Settlement of Class Action Lawsuit be sent to the Class Members, and approved Analytics Consulting, LLC ("Analytics") as the Settlement Administrator. ECF No. 70.

Representative Plaintiff engaged Analytics as the Settlement Administrator. Decl. of Jeff Mitchell, attached as **Exhibit 2**, ¶ 4. Analytics was provided with a list that contained the names and last known mailing addresses for the 2,545 Class Members. *Id.*, ¶ 6. On July 25, 2024, Analytics mailed by first-class mail the Court-approved Notice of Class Action Settlement to the

Class Members. *Id.*, ¶ 8. 44 notices were returned to Analytics with forwarding addresses. Analytics re-mailed those notices to the updated addresses. *Id.*, ¶ 9. A total of 203 notices were returned as undeliverable. *Id.*, ¶ 10. Analytics traced and re-mailed notices to 142 of those Class Members. *Id.*

The Notice gave the Class Members until September 23, 2024 to submit a signed Consent and Release Form, request exclusion from the class, or object to the settlement. *Id.*, ¶¶ 11-12. No Class Members objected to the settlement and 15 Class Members requested exclusion from the settlement. *Id.*, ¶ 12. In addition to the 234 opt-in plaintiffs who previously joined the case, 394 Class Members returned a signed Consent and Release Form, joining the FLSA portion of the settlement. *Id.*, ¶ 11.

## III. <u>FINAL APPROVAL IS APPROPRIATE IN THIS CASE.</u>

The settlement is subject to approval by the Court pursuant to Rule 23. Courts in the Sixth Circuit use a three-step process for approving class action settlements. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (Newman, J.). The first step requires the court to preliminarily approve the class action settlement. *Id.* The second step requires that notice of the class action settlement be issued to the proposed settlement class members. *Id.* The third step requires the court to holding a fairness hearing and decide whether to grant final approval of the class action settlement. *Id.* The Court preliminarily approved the settlement on June 27, 2024. ECF No. 70. Notice of the class action settlement was sent to the Class Members on July 25, 2024. Currently, the Parties are requesting that the Court grant final approval of the settlement.

For final approval, the Court must ensure that the proposed settlement class outlined in the

settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[1] Then, the Court must ensure that the settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable, and adequate. As discussed below, these requirements are met here.

### A.    The Settlement Class Satisfies the Certification Requirements of Rule 23(a).

In total, the proposed settlement class (with Representative Plaintiff) includes 2,545 individuals. ECF Nos. 69-1, Settlement Agreement, ¶5; 69-2, Coffman Decl., ¶ 23.

Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).  All four (4) elements are satisfied here.

### 1.    *The numerosity requirement of Rule 23(a)(1) is met.*

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (Black, J.) (internal quotation marks omitted). This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.* Numerosity is easily satisfied here because the proposed settlement class includes 2,545 individuals. *See, e.g.*, *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) ("[I]t is generally accepted that a class of 40 or more members is sufficient to establish numerosity.").

### 2.    *The commonality requirement of Rule 23(a)(2) is met.*

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183,

---

[1] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three (3) conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

(quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)) (internal quotation marks omitted). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotation marks and citation omitted).

In this case, the legal issue that links the Class Members—whether they were unlawfully denied overtime compensation as a result of not being paid for time spent "booting up" their computers and logging in to and out of Defendant's computer systems, time tracking system, and numerous software applications/programs—is undoubtedly "substantially related to the resolution of the litigation." Accordingly, the commonality requirement is met.

3.    *The typicality requirement is of Rule 23(a)(3) is met.*

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185. Commonality and typicality "are separate and distinct requirements," but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same course of conduct: its alleged failure to pay Representative Plaintiff and the Class Members overtime compensation for time spent "booting up" their computers and

logging in to and out of Defendant's computer systems, time tracking system, and numerous software applications/programs.

### 4. *The adequacy of representation requirement of Rule 23(a)(4) is met.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Id.* at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policy that affects the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members, namely, unpaid overtime compensation. Thus, Representative Plaintiff's interests are aligned with those interests of the Class Members. Moreover, Representative Plaintiff is willing and able to fulfill her duties as the class representative. She has been actively involved in the prosecution of this case, responded to written discovery requests, sat for a deposition, attended mediation, and was instrumental in the Parties reaching the settlement. ECF No. 69-2, Coffman Decl., ¶ 43.

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. Class Counsel has litigated hundreds of wage and hour cases in state

and federal courts around the country. *Id.*, ¶ 8. Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

    **B.**    <u>**The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**</u>

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

    1.    <u>*The predominance requirement of 23(b)(3) is met.*</u>

The predominance requirement examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirement is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including (a) whether Defendant failed to pay Representative Plaintiff and the Class Members all overtime compensation as a result of allegedly not paying them for time spent "booting up" their computers and logging in to and out of Defendant's computer systems, time tracking system, and numerous software applications/programs; (b) whether Representative Plaintiff and the Class Members worked overtime and, if so, how much overtime they worked; and (c) whether Representative Plaintiff and the Class Members were denied overtime compensation as a result of Defendant's alleged unlawful pay policies.

2. *The superiority requirement of Rule 23(b)(3) is met.*

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of certification.

First, there is no evidence that the proposed Class Members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation alleging unpaid overtime compensation against Defendant involving the proposed Class Members. Third, the benefits of concentrating the claims in this Court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction and many of Defendant's witnesses are located in this district. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court. A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant "the benefit of finality and repose." *Swigart*, 288 F.R.D. at 187 (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of

resolving these claims.

**C.** **The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 367 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (internal quotation marks omitted).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Emps. Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane*, 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514 (emphasis in original) (citing *DeJulius*, 429 F.3d at 944; *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110–11 (10th Cir. 2001); *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by mail at the last known addresses shown in the defendant's business records. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 174–77).

On July 25, 2024, Analytics mailed, by first-class mail, the Court-approved Notice of Class

Action Settlement to the Class Members. Mitchell Decl., Ex. 2, ¶ 8. 44 notices were returned to Analytics with forwarding addresses. Analytics re-mailed those notices to the updated addresses. *Id.*, ¶ 9. A total of 203 notices were returned as undeliverable. *Id.*, ¶ 10. Analytics was able to trace and re-mail notices to 142 of those Class Members. *Id.*

The Notice gave the Class Members until September 23, 2024 to return a signed Consent and Release Form, request exclusion from the class, or object to the settlement. *Id.*, ¶¶ 11–12. No Class Members objected to the settlement and 15 Class Members requested exclusion from the settlement. *Id.*, ¶¶ 11–12.

### D. The Settlement Is Fair, Reasonable, and Adequate under Rule 23(e).

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below. *UAW*, 497 F.3d at 631 (internal quotation marks omitted). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (collecting cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145–46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *accord Sweet v. Gen. Tire & Rubber Co.*, 1982 WL 278, at *5 (N.D. Ohio Mar. 17, 1982).

The seven (7) factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

135297798v1

*UAW*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir. 1983)). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments . . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. As discussed below, each of these factors supports final approval here.

       1.   <u>*No indicia of fraud or collision exists.*</u>

There was no fraud or collusion in reaching the settlement. "[C]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 WL 4913678, at *4 (N.D. Ohio Oct. 10, 2018) (internal quotation marks and further citation omitted). All settlement negotiations were extensive, conducted fairly, at arm's-length, and only occurred after the exchange and rigorous analysis of the relevant case law and pay data. ECF No. 69-2, Coffman Decl., ¶¶ 20, 37; *see Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (explaining that arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements). Counsel for both Parties, who are experienced in wage and hour class and collective actions, support the settlement as fair and reasonable, and all certify that it was reached at arm's-length. ECF No. 69-2, Coffman Decl., ¶ 37. Further, the settlement was only reached after the Parties mediated before mediator Frank A. Ray and Mr. Ray issued a Mediator's Proposal and Recommendation, which the Parties accepted.

       2.   <u>*The complexity, expense, and likely duration of continued litigation favor approval.*</u>

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Wage and hour class and collective actions are expensive and time-consuming. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3–4

135297798v1

(S.D. Ohio Aug. 17, 2018) (Watson, J.) (further citation omitted) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ("[W]age and hour class and collective actions, such as this, are inherently complex and time-consuming."); *see also Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020) (Rice, J.) (further citation omitted) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.").

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. The settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently and amplifies the benefits of that relief through the economies of class resolution. ECF No. 69-2, Coffman Decl., ¶ 53.

3.     *Investigation was sufficient to allow the Parties to act intelligently.*

To confirm that Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly*, 2020 WL 6536342 at *5 (internal quotation marks and further citation omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so

long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal quotation marks omitted); *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (Black, J.) (stating that while the parties had not reached conducting depositions, "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the settlement. Defendant produced the payroll and other wage data required for the Parties to construct a proper damages model, the Parties exchanged and responded to written discovery, and Defendant took a deposition of Representative Plaintiff. In addition, the legal issues in this case were thoroughly researched and debated by the Parties. ECF No. 69-2, Coffman Decl., ¶ 54.

4.     *The risks of litigation and uncertainty of recovery favor approval.*

Counsel for both sides believes in the merits of its respective client's/clients' positions but nonetheless recognizes that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to the claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree. ECF No. 69-2, Coffman Decl., ¶ 49.

5.     *Experienced counsel's views favor approval.*

The recommendation of Class Counsel, skilled in class actions, that the Court should

135297798v1

approve the settlement is entitled to deference. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *19–20; *see also Vukovich*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' respective counsel is experienced in wage-and-hour class actions, has acted in good faith, and has represented its client's/clients' best interests in reaching the settlement. Counsel supports the settlement as fair and reasonable and in the best interest of the Class as a whole. ECF No. 69-2, Coffman Decl., ¶¶ 25, 38, 49.

6.    *The reaction of absent class members cannot be assessed until after notice issues.*

On July 25, 2024, Analytics mailed, by first-class mail, the Court-approved Notice of Class Action Settlement to the Class Members. Mitchell Decl., Ex. 2, ¶ 8. 44 notices were returned to Analytics with forwarding addresses. Analytics re-mailed those notices to the updated addresses. *Id.*, ¶ 9. A total of 203 notices were returned as undeliverable. *Id.*, ¶ 10. Analytics was able to trace and re-mail notices to 142 of those Class Members. *Id.*

The Notice gave the Class Members until September 23, 2024 to return a signed Consent and Release Form, request exclusion from the class, or object to the settlement. *Id.*, ¶¶ 11–12. No Class Members objected to the settlement and 15 Class Members requested exclusion from the settlement. *Id.*, ¶¶ 11–12.

7.    *The public interest favors settlement.*

Approval of a fair and reasonable settlement agreement promotes the public's interest in

14

encouraging settlement of litigation. *See Satterly*, 2020 WL 6536342, at *7; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Indeed, the "touchstone for final approval is the effect on the class <u>as a whole</u> in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *11 (E.D. Mich., Dec. 20, 1996) (emphasis in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both Parties face through the litigation process.

### E.   <u>The Settlement Distributions Are Fair, Reasonable, and Adequate.</u>

As a part of the scrutiny it applies to a wage and hour settlement, "it is a court's responsibility to ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 WL 10715595, at *9 (N.D. Ohio Aug. 10, 2009). In the present case, the settlement provides that the total settlement amount will be distributed as follows: (a) individual payments to the Class Members who do not opt out of the settlement; (b) a service award to Representative Plaintiff; (c) Class Counsel's attorneys' fees and litigation expenses; and (d) the cost of settlement administration. The amounts remaining in the Global Settlement Fund – after the Service Award, the attorneys' fees and litigation costs, and the Settlement Administrator's fee have been deducted – will be distributed to Class Members who do not opt out of the settlement, including Representative Plaintiff and Opt-In Plaintiffs, on a pro rata basis depending on the number of workweeks that they worked forty (40) or more hours during

135297798v1

the Covered Period or the Opt-In Plaintiff Covered Period, as applicable, in comparison to the total number of workweeks and hours worked by all Class Members.

As discussed below, all components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Class Members.

1.   <u>The individual payments are reasonable and adequate.</u>

All Class Members will receive an individual payment. Their individual payment was calculated on a pro rata basis based on the number of workweeks during which they worked forty (40) or more hours during the applicable timeframe, in comparison to the total number of workweeks during which all Class Members worked forty (40) or more hours during the Covered Period. ECF No. 69-1, ¶49. According to Class Counsel's analysis, the settlement payments reflect the value of approximately 5 minutes of additional work performed each day during the applicable lookback period. ECF No. 69-2, Coffman Decl., ¶ 29.

In short, if approved by the Court, the settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation, and it is Class Counsel's opinion that the settlement is fair and reasonable.

2.   <u>The service awards are proper and reasonable.</u>

The settlement provides for a service award of $10,000 to Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation because they "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms*

16

*Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litigation*, 130 F.R.D. 366, 374 (S.D. Ohio 1990); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

The proposed service award set forth in the settlement agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly*, 2020 WL 6536342, at *7 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, Dkt. No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an opt-in plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) (approving a $10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376, at *7–8 (same); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (same); *Swigart*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (Black, J.) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F.

17

Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 25, 2013) (Marbley, J.) (awarding $12,500 service award).

Representative Plaintiff spent significant time assisting Class Counsel in its investigation and prosecution of this case. Furthermore, Representative Plaintiff completed written discovery, sat for a deposition, attended mediation, and continued to work closely with Class Counsel even after the mediation was unsuccessful to bring this dispute to a resolution. In addition, Representative Plaintiff attached her name to a publicly filed lawsuit against her former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018)) (holding that such conduct justifies a service award). As such, the time and efforts that Representative Plaintiff provided supports the requested service award. ECF No. 69-2, Coffman Decl., ¶ 43.

3.   *The attorneys' fees and expenses to Class Counsel are proper and reasonable.*

After the Court has confirmed that the terms of settlement are fair to the Class Members, it may review the settlement agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)),

135297798v1

*cert. denied*, 513 U.S. 875 (1994).

In this case, the settlement provides that Class Counsel receive one-third (1/3) of the total settlement amount as payment for its attorneys' fees. A one-third (1/3) fee is "typical for attorney's fees in common fund" wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4–8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.); *Morse v. NTI Servs., Corp.*, 2:20-cv-2173, 2021 WL 4350485, at *2 (S.D. Ohio Sept. 17, 2021) (Sargus, J.). In fact, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert*, 2019 WL 4574509 at *4 (quoting *Swigart*, 2014 WL 3447947, at *5). This "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, at *5 (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950, at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *5–7 (S.D. Ohio May 17, 2021) (Rice, J.).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021) (Marbley, J.). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (Marbley, J.). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead rewards counsel for success and penalizes it for failure." *Id.* (internal quotation marks and citations omitted).  Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *6 (S.D. Ohio Nov. 5, 2020) (Rice, J.); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018) (Black, J.);

*Dillow*, 2018 WL 4776977, at \*4; *Carr*, 2018 WL 7508650 at \*4; *see also Osman*, 2018 WL 2095172, at \*3 (further citation omitted) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (internal quotation marks and citations omitted). This Court has awarded class counsel a one-third (1/3) fee in similar cases. *See, e.g.*, *Bailey v. Black Tie Mgmt. Co.*, No. 2:19-cv-1677, 2020 WL 4673163 (S.D. Ohio Aug. 12, 2020); *Morse*, 2021 WL 4350485.

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses. ECF No. 69-2, Coffman Decl., ¶ 42. "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at \*7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at \*5 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, courts acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 WL 1614822, at \*6. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of total settlement amount appropriately compensates Class Counsel for its prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at \*4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

135297798v1

The settlement agreement also provides that Class Counsel will be reimbursed their out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $14,328.89. ECF No. 69-2, Coffman Decl., ¶ 44. Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should approve payment from the fund to Analytics in the amount of $24,998.00 for settlement administration costs.[2] *Id.*, ¶ 36.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the settlement is fair, reasonable, and adequate and grant final approval under Rule 23(e).

## IV. CONCLUSION

This settlement is ripe for final approval. Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Order that:

- Certifies the Rule 23 settlement class as defined in the Parties' Settlement Agreement;

- Approves, pursuant to Rule 23(e)(2), the settlement of this action as "fair,

---

[2] Analytics specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics on class and collective action notice and settlement administration, and Analytics has been approved as settlement administrator in cases across the country. *See, e.g.*, Karpik v. Huntington Bancshares Inc., No. 2:17-cv-1153, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021) (Watson, J.) ("[T]he Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement"); Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020 WL 1325014, at *8 (E.D. Cal. Mar. 20, 2020) ("Analytics Consulting, LLC, is appointed as the settlement administrator"); Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *6 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator").

reasonable, and adequate";

- Approves the waiver and release of claims of the Representative Plaintiff, the Class Members, the Eligible Settlement Participants, and Opt-In Plaintiffs as provided in the settlement agreement;

- Approves the distributions to the 625 Class Members who have not requested exclusion from the settlement in accordance with the Settlement Agreement;

- Designates Representative Plaintiff as the Class Representative;

- Approves the service payment to Representative Plaintiff;

- Designates Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC as Class Counsel; and

- Approves Class Counsel's request for attorneys' fees and litigation expenses.

Respectfully submitted,

| **COFFMAN LEGAL, LLC** | **TAFT STETTINIUS & HOLLISTER LLP** |
|---|---|
| */s/ Adam C. Gedling* | */s/ David J. Butler* |
| Matthew J.P. Coffman (0085586) | David J. Butler (0068455) |
| Adam C. Gedling (0085256) | Pamela S. Krivda (0041133) |
| Kelsie N. Hendren (0100041) | Janica Pierce Tucker (0075074) |
| Tristan T. Akers (0102298) | Rachel A. Smoot (0092296) |
| 1550 Old Henderson Rd. | Abigail M. Thederahn (0100242) |
| Suite 126 | 41 S. High Street, Suite 1800 |
| Columbus, OH 43220 | Columbus, OH 43215-4213 |
| 614.949.1181 | Telephone: 614-221-2838 |
| 614.386.9964 (Fax) | Facsimile: 614-221-2007 |
| Email: mcoffman@mcoffmanlegal.com | Email: dbutler@taftlaw.com |
| agedling@mcoffmanlegal.com | pkrivda@taftlaw.com |
| khendren@mcoffmanlegal.com | jpierce@taftlaw.com |
| takers@mcoffmanlegal.com | rsmoot@taftlaw.com |
| | athederahn@taftlaw.com |
| *Attorneys for Representative Plaintiff and those similarly situated* | *Attorneys for Defendant Quantum Health, Inc.* |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Adam C. Gedling*
Adam C. Gedling
*Counsel for Representative Plaintiff*

135297798v1