**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMIEE TRACY**, on behalf of herself and others similarly situated, | ) ) ) | **Case No. 2:22-cv-00294** |
| Plaintiff, | ) ) | |
| v. | ) ) | **JUDGE JAMES L. GRAHAM** |
| | ) ) | **MAGISTRATE JUDGE KIMBERLY A.** |
| **QUANTUM HEALTH, INC.,** | ) ) | **JOLSON** |
| Defendant. | ) ) ) | |

**ORDER GRANTING THE PARTIES'**
**JOINT MOTION FOR FINAL APPROVAL**

The matter before the Court is the Joint Motion for Certification of the Settlement Class

and Final Approval of Class Action Settlement ("Joint Motion for Final Approval"). ECF No. 73.

For the reasons set forth below, the Court **GRANTS** the Motion.

**I.      BACKGROUND**

On January 25, 2022, Plaintiff Amiee Tracy ("Plaintiff"), on behalf of herself and those

similarly situated, filed her Collective and Class Action Complaint, seeking all available relief

under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio

Minimum Fair Wage Standards Act, O.R.C. §§ 4111.03 and 4111.08 ("OMFWSA"); and the Ohio

Prompt Payment Act ("OPPA"), O.R.C. § 4113.15.

Plaintiff's Complaint alleges that Quantum Health, Inc. ("Defendant" or "Quantum") failed

to pay Plaintiff and similarly situated hourly, non-exempt customer service employees for time

spent "booting up" their computers and logging in to and out of Defendant's computer systems,

time tracking system, and numerous software applications/programs. Plaintiff also alleges that

Quantum failed to pay its hourly, non-exempt customer service employees for time spent logging

135301487v1

out of Defendant's computer systems, time tracking system, and numerous software applications and shutting down their computers at the end of each workday. Further, Plaintiff alleges that Defendant required its hourly customer service employees to clock out during meal breaks, during which their systems/programs would "time out" or otherwise shut down, and to log in and boot back up these systems/programs before clocking back in after finishing their meal breaks. The claims are asserted under both the FLSA and Ohio law on behalf of Plaintiff and similarly situated hourly customer service employees. Defendant denies these claims and asserts that it has properly paid its employees at all times.

Plaintiff, the opt-in plaintiffs, and other hourly customer service employees provide customer service to Quantum's clients. These customer service employees include Patient Services Representatives ("PSRs"), PSR Bilinguals, Electronic PSRs, Transplant Care Coordinators, Disability Care Coordinators, PPOM Care Coordinators, Care Partner Care Coordinators, and Claims Specialists. Plaintiff herein contends that Defendant required its customer service employees to perform unpaid off-the-clock work that is related to their primary job activities, including the performance of preliminary and postliminary activities that are an integral and indispensable part of their principal activities. Defendant maintains that it has properly paid its hourly customer service employees all overtime compensation owed and for all hours worked.

The Parties stipulated to, and the Court granted, conditional certification of an FLSA collective action for the following individuals: "All current and former hourly, non-exempt customer service employees[1] of Defendant who were paid for at least forty (40) or more hours in any workweek from January 25, 2019 to [May 3, 2022]." ECF No. 17, 21. A total of

---

[1] "Customer service employees" are defined as employees with a title and/or position of Patient Services Representative ("PSR"), PSR Bilingual, Electronic PSR, Transplant Care Coordinator, Disability Care Coordinator, PPOM Care Coordinator, Care Partner Care Coordinator, and/or Claims Specialist.

approximately 231 individuals opted in to this lawsuit by returning a signed Consent to Join form during the first round of notice.

The parties reached a settlement upon stated terms and conditions, which are set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement") that resolves all claims that were or could have been asserted in the lawsuit. Based on their extensive investigation, Plaintiff's counsel ("Class Counsel") is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class in light of the risk of significant delay, costs, and uncertainty associated with litigation, including Defendant's defense(s).

**II.** **The Settlement Agreement**

Pursuant to the Settlement Agreement provides, Defendant has created a total settlement fund of $900,000.00 ("Settlement Fund") to resolve this lawsuit.

The Settlement Fund will be distributed to the Class Members on a pro-rata basis. Named Plaintiff and the 625 opt-in plaintiffs who filed signed Consent and Release forms to participate in this case and who did not opt out of the Rule 23 settlement ("Opt-In Plaintiffs") will waive all claims under the FLSA and Ohio law as set forth in the Settlement Agreement. Class Members who did not return Consent and Release forms and who did not request exclusion from the Rule 23 settlement will only waive their claims under Ohio law as set forth in the Settlement Agreement. Although the precise amount of damages each Class Member will receive varies, a minimum payment of $10.00 will be issued to Class Members whose damages do not exceed this amount.

In addition to individual payments to Class Members who did not opt out of the settlement, the Settlement Fund provides for the following distributions: attorneys' fees, costs and expenses, the cost of settlement administration, and a service award in the amount of $10,000 to Plaintiff.

135301487v1

In exchange for their payments, Plaintiff, the Opt-In Plaintiffs, and the Class Members will release their wage and hour claims asserted in this lawsuit as set forth in the Settlement Agreement and be mailed their proportionate share of the Settlement Fund by Analytics Consulting, LLC, the settlement administrator ("Analytics" or "Settlement Administrator").

**III.** **The Notice Process**

On June 27, 2024, this Court preliminarily approved the proposed Rule 23 settlement in this matter for settlement purposes.

As indicated in the parties' Joint Motion for Final Approval, no one objected to the settlement, and 15 Class Members requested exclusion. Class Counsel worked with Analytics to ensure that notice of the settlement was successful.

Through these efforts, the parties achieved a successful Rule 23 settlement, which provided the 2,530 participating Class Members individual settlement awards. Therefore, as more fully explained below, I find that the parties' settlement is fair and reasonable.

**IV.** **Analysis**

    **A.** **The Factors Support Approval of the Settlement**

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors to determine whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and

135301487v1

(7) the public interest.

*Id.* (citing *UAW*, 497 F.3d at 631); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright*, 2018 WL 3966253, at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)). As set forth below, the settlement meets the standard for final settlement approval and, therefore, is approved by the Court.

### 1. The Notice Process

The Court will consider the notice process used in this case. After the Preliminary Approval Order was entered, Analytics implemented the notice plan as outlined below.

Analytics was provided with a list that contained the names and last known mailing addresses for the 2,545 Class Members. On July 25, 2024, Analytics mailed by first-class mail the Court-approved Notice of Class Action Settlement to the Class Members. 44 notices were returned to Analytics with forwarding addresses. Analytics re-mailed those notices to the updated addresses. A total of 203 notices were returned as undeliverable. Analytics traced and re-mailed notices to 142 of those Class Members.

The Notice gave the Class Members until September 23, 2024 to submit a signed Consent and Release Form, request exclusion from the class, or object to the settlement. No Class Members objected to the settlement, and 15 Class Members requested exclusion from the settlement. In addition to the approximately 234 opt-in plaintiffs who previously joined the case, 395 Class Members returned a signed Consent and Release Form, joining the FLSA portion of the settlement.

The Court finds that this notice process provided Class Members with an appropriate notice

135301487v1

under Rule 23 and met the FLSA's remedial goals. According to Analytics, 2,484 of the 2,545 Class Members, or 98 percent, received the notice. The Court finds this reflects well on the notice process used in this case. Moreover, the claims rate in this case is excellent, given that 99 percent of the Class Members will be included in the settlement.

### 2. The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright*, 2018 WL 3966253, at *3 (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length and good-faith negotiations conducted by experienced counsel on both sides. Consequently, nothing before the Court suggests that the Settlement Agreement is the result of fraud or collusion. This factor weighs in favor of approval.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation

From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex, and settlement avoids the costs, delays, and many other associated problems. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Wright*, 2018 WL 3966253, at *3; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case was no exception.

This lawsuit involved complex issues of fact, and this factor weighs in favor of approval of the settlement. *Wright*, 2018 WL 3966253, at *3–4; *see Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *3–4 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019).

### 4. The Amount of Discovery Engaged in by the Parties

To confirm that plaintiffs "have had access to sufficient information to evaluate their case

135301487v1

and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253, at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)) (internal quotation marks omitted). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id*. at *4 (internal quotation marks and citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*.; *Mitchell*, 2019 WL 696941, at *4; *see Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not yet conducted depositions, "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

In this case, the Court finds that the parties engaged in sufficient investigation. The parties exchanged written discovery and relevant information, including payroll and other wage data for the 231 original Opt-In Class Members, which allowed Plaintiff to construct a damages model. Moreover, Defendant took the deposition of Plaintiff Amiee Tracy. In addition, the legal issues were thoroughly researched and debated by the parties and thus the value of the claims were properly assessed. As a result, the Court finds that this exchange of information meets the level required to inform settlement negotiations by experienced counsel. *See Wright*, 2018 WL 3966253, at *4; *see Mitchell*, 2019 WL 696941, at *4.

### 5. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the

probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253, at \*4 (quoting *Poplar Creek*, 636 F.3d at 245); *see Mitchell*, 2019 WL 696941, at \*4 (internal quotation marks and citations omitted).

The Court observes that counsel for both sides believe in the merits of their respective positions and have vigorously represented their clients' interests throughout the litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. The Settlement Agreement provides relief to the Class Members and eliminates the risks that the parties would otherwise bear if the litigation were to continue on for years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at \*3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013)) and *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012)).

Absent settlement, the parties would have engaged in significant discovery, including but not limited to responses to discovery requests of many (if not all) of the opt-in plaintiffs, numerous depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (i.e., Rule 23 class certification, a final determination on FLSA similarly situatedness, dispositive motions on the merits and damages issues, etc.). Further, even if Plaintiff prevailed on the merits, any recovery could be significantly curtailed if a jury concludes that Defendant acted in good faith or Plaintiff failed to establish a willful violation of the law. Moreover, an appeal could be filed on one or more issue(s).

On the other hand, Defendant faces the prospect of class-wide liability to more than 2,500 current and former hourly customer service employees. By agreeing to the settlement, these risks are eliminated, and participating Class Members are guaranteed to receive an excellent recovery

135301487v1

now rather than possibly receiving a recovery years from now (or not receiving any recovery at all). *Barnes*, 2019 WL 1614822, at *3.

Therefore, the Court finds that these considerations all weigh in favor of approving the settlement.

### 6.     The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, is that the Court should approve the settlement. The recommendations of Class Counsel are entitled to deference. *Wright*, 2018 WL 3966253 at *4-5; *Mitchell*, 2019 WL 696941, at *5; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Plaintiff approves the Settlement Agreement. In addition, Class Counsel opines that the settlement is a fair, reasonable, and adequate resolution of this litigation. Class Counsel is experienced in wage-and-hour class and collective actions, has acted in good faith, and has represented their clients' best interests in reaching this Settlement. The Court is familiar with the work of Attorneys Coffman, Gedling, Hendren, and Akers and finds that they are well-versed in wage and hour claims, including class and collective actions. For the reasons set forth above as well as in Attorney Coffman's declaration already submitted to the Court, the Court finds that this factor weighs in favor of approving the settlement.

### 7.     The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL

3966253, at *5 (internal citations omitted). As indicated above, the Class Members' reactions strongly support approval. No Class Member objected to the settlement and only 15 requested exclusion from the settlement. As noted above, the inclusion rate of 99% is of course excellent.

### 8. The Public Interest

The public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253, at *5; *Mitchell*, 2019 WL 696941, at *5–6; *Kritzer*, 2012 WL 1945144, at *8; *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). This case is no exception. The settlement provides relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the settlement.

### 9. Overall Settlement Terms

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer*, 2012 WL 1945144, at *8 (citing *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro rata basis so long as the ultimate distribution is fair, reasonable, and adequate. *Id.* (internal citations omitted).

(a) *The individual payments are reasonable and adequate.*

In the present case, this settlement establishes a Settlement Fund that will be divided amongst the Class Members on a pro rata basis based upon the number of workweeks in which each class member worked forty or more hours compared to the total number of workweeks in which all Class Members worked forty or more hours during the relevant time period. These pro rata payments ensure an equitable distribution of settlement proceeds that is directly tied to the

135301487v1

claims of and harms allegedly suffered by the Class Members and will provide them with a proportionate share of the settlement funds.

With respect to the settlement payments to the Class Members, the Court finds that the individual payments are reasonable. The settlement payments vary, but Class Members will receive a minimum payment of $10.00 if their calculated payments do not exceed that amount. The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the Class Members' overtime claims.

(b) *Plaintiff's service award is reasonable.*

The Sixth Circuit declared that "numerous courts have authorized incentive awards… [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *Wright*, 2018 WL 3966253, at *7 (internal quotation marks and citations omitted); *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (internal quotation marks and citations omitted). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253, at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)).

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played

may be proper in given circumstances." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (iternal citations omitted); *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating that among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

For her individual efforts, Plaintiff requested a service payment in the amount of $10,000. In the present case, the Court finds that Plaintiff's role in the litigation was necessary, and the requested payment amount reflects her contributions. In addition, Plaintiff attached her name to a publicly filed lawsuit against her former employer. *Osman*, 2018 WL 2095172, at *2 (citing *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving the award in an FLSA case because the plaintiffs "took risks by putting their names on this lawsuit, including that of 'blacklisting'") (internal quotation marks omitted). Therefore, the Court finds that this service payment is reasonable and approves the amount sought, particularly in light of the fact that the proposed service payment set forth in the agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *8-9 (S.D. Ohio Sept. 25, 2020) (approving service awards of $2,500 to $15,000 to five plaintiffs); *Al-Sabur v. ADS Alliance Data Sys., Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an opt-in plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376, at *8 (same); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17,

135301487v1

2018) (same).

Therefore, given that all of the factors weigh in favor of approval, the Court **GRANTS** the parties' Joint Motion for Final Approval.

> **B.** **Plaintiff's Attorneys' Fees and Reimbursement of Costs Are Reasonable and Appropriate for Final Approval.**

>> **1.** **Class Counsel Is Entitled to the Requested Fee.**

As this Court has declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Wright*, 2018 WL 3966253, at \*6 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)); *Mitchell*, 2019 WL 696941, at \*6 (internal citations omitted); *see also Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at \*13 (S.D. Ohio Jan. 26, 2011) (internal citations omitted) ("Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved."). Rule 23 authorizes a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h).

Class Counsel asks the Court to approve an attorneys' fees award of one-third of the settlement fund. Defendant does not object to the requested fee award. Moreover, no Class Member has objected to this fee. The Court notes that Plaintiff's successful pursuit of this action supports the requested fee award. *See Wright*, 2018 WL 3966253, at \*6 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974)).

>>> (a)  *The Court adopts the "percentage of the fund" approach.*

The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to

135301487v1

determine a reasonable attorney's fee from a common fund settlement. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4 (S.D. Ohio Sept. 20, 2019) (internal citations and quotation marks omitted) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases"); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014) (same); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (stating that the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"). Indeed, "[a]bsent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects [the] FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021).

This Court has consistently held that 1/3 of the settlement fund is a normal and reasonable attorneys' fee amount to request in wage and hour cases. *See, e.g.*, *McManaway v. Select Energy Servs., LLC*, No. 2:23-cv-1405, 2024 WL 2017703, at *2 (S.D. Ohio May 7, 2024) ("When using the percentage-of-the-fund method, Courts in this Circuit generally approve of awards that are one-third of the total settlement."); *O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio Nov. 2, 2021) (finding attorneys' fees representing approximately one-third of the total settlement fund as reasonable); *Pierce v. Diversified Health Mgmt., Inc.*, No. 2:21-cv-2624, 2021 WL 4401437, at *2 (S.D. Ohio Sept. 27, 2021) (internal citations omitted) (same); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (internal citations omitted) ("[A]ttorneys' fees . . . represent[ing] one-third of the total settlement amount . . . are reasonable."); *Satterly*, 2020 WL 6536342, at *10 (internal citations omitted) ("Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the

settlement fund is a 'normal fee amount in a wage and hour case.'"); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court . . . finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees."); *Al-Sabur*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *see also Walton v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees).

Here, Class Counsel requests a fee award of one-third of the settlement fund. This fee amount is normal in common fund settlements in wage and hour cases. The Court finds that Class Counsel's request for a one-third fee is approved.

(b)     *Reasonableness of Fee Award*

After the Court has confirmed that the settlement terms are fair to the Class Members, it may review the Settlement Agreement regarding the provision of attorneys' fees and litigation costs/expenses incurred by Class Counsel. In determining the reasonableness of fees, the Court recognizes that "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks and citations omitted). Further, "an award of attorney fees . . . encourages the vindication of congressionally identified policies and rights." *Id.* at 1134–35 (internal quotation marks and citations omitted).

Class Counsel litigated this case on a wholly contingent basis with no guarantee of recovery. "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs

135301487v1

in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (internal citations omitted); *see also Kritzer*, 2012 WL 1945144, at *9 ("Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated… [which] cuts significantly in favor of awarding them a significant fee recovery.").

As noted above, this case was a complex wage and hour class action. "Generally speaking, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ganci*, 2019 WL 6485159, at *7 (alteration in original) (internal quotation marks and further citation omitted). Moreover, this Court has awarded Class Counsel a one-third fee in similar cases. *See Charles Fravel v. Gen. Mills Operations, LLC*, Case No. 2:20-cv-01094 (S.D. Ohio Oct. 28, 2020); *Baker v. Collins Mobile, LLC*, 2:22-cv-01996 (S.D. Ohio Dec. 16, 2020); *Bailey v. Black Tie Mgmt Co.*, 2:19-cv-1677 (S.D. Ohio Aug. 12, 2020); *Mulledy v. Am. Air Furnace Co.*, 2:20-cv-5185 (S.D. Ohio April 13, 2021); *Morse v. NTI Servs., Corp.*, 2:20-cv-2173, 2021 WL 4350485, at *2 (S.D. Ohio Sept. 17, 2021).

Plaintiff and Defendant are represented by experienced counsel. All members of counsel here are highly qualified and have substantial experience in federal litigation and collective/class action litigation. Class Counsel has substantial experience in wage-and-hour litigation. The Court is familiar with the legal counsel provided by Attorneys Coffman, Gedling, Hendren, and Akers, particularly in wage and hour matters, and this case was no exception.

For these reasons, the Court determines that the fees requested are reasonable and **GRANTS** Class Counsel's request for fees for 1/3 of the common fund.

### 2. Class Counsel Is Entitled to Reimbursement of Costs and Expenses.

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all

reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *Brandenburg*, 2019 WL 6310376, at \*7. Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (internal citations omitted).

Here, Class Counsel requests $14,328.89 in costs/expenses that have been incurred prosecuting this lawsuit.

The Settlement Agreement also provides that settlement administration costs will be deducted from the common fund. The Settlement Administrator's fees are $24,998.00.

The Court finds these expenses to be reasonable and necessary in connection with litigating and resolving this case. Defendant does not dispute that the fees are reasonable and reimbursable. The Court **GRANTS** Class Counsel's request for expense reimbursement of $14,328.89 and administration costs up to $24,998.00.

## V.   Conclusion

Based on the foregoing, the parties' Joint Motion for Final Approval is **GRANTED**. Accordingly, the Court finds as follows:

1.   Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;

2.   The terms and provisions of the Settlement Agreement are the product of thorough,

135301487v1

arms-length and good faith negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money, and effort to the Court and the parties and will further the interests of justice;

3.     All Class Members are bound by this Judgment and by the terms of the Settlement Agreement, including but not limited to the release provisions;

4.     Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action;

5.     The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members. Plaintiff participated in the Action, acted to protect the Class Members, and assisted her counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into with good faith, providing a fair, reasonable, adequate, and certain result for the Class Members. Class Counsel has requested an award of $300,000 in attorneys' fees and $14,328.89 in expenses incurred in the prosecution of the Action. The Court concludes that the requested fees and expenses are fair, reasonable, and adequate. Analytics shall also be paid $24,998.00 for administering this settlement. Further, Plaintiff is entitled to a service award of $10,000;

6.     The parties shall notify the Court once the final settlement payment is made, at which time the Court will dismiss the Action with prejudice as well as all Released Claims against each and all Released Persons and without costs to any of the parties as against the others except as otherwise agreed;

7.     Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement and all matters ancillary thereto.

JAMES L. GRAHAM
UNITED STATES DISTRICT JUDGE

DATE:

135301487v1